### P. C. & St. L. Ry. Co. v. Emile Schmidt.

1. **Action for Money, Arising under Principles of Subrogation, is Appealable.**

An action for money against a trustee carrying on business under the direction of a will, where plaintiff's right, if he has any, must arise under the general doctrine of subrogation, is an equitable action, and is appealable.

2. **Suit Against Trustee Should Allege that he Has Given Bond Required.**

Where the will appoints a party as executor and also as trustee to carry on business, separate and apart from his duties as executor, such party is required, under sec. 5981, Rev. Stat., to give separate bonds for each position, and in a suit against him, on a claim arising in the business so carried on by him as trustee, the petition should allege that he had given the bond required as trustee.

3. **Will Directing Estate to be Used in Carrying on Business is Subject to Law that Personal Debts Must be Paid.**

Where the will directs that the whole personal estate should be used in carrying on a business, such direction is subject to the law that the personal estate must first pay the personal debts of the testator, and only the personal estate remaining after payment of such personal debts can be used by the trustee to carry on the business.

4. **What Creditor must Allege to be Subrogated to Rights of Trustee.**

Where a creditor of the business thus carried on by such trustee, who as executor of the estate has paid personal creditors of the testator out of the personal estate, asks to be subrogated to the rights of such trustee as against such creditors paid, on the ground that the business was thus carried on by the trustee with the consent of such personal creditors, and that they were paid with the proceeds of the business thus carried on by the trustee, the petition should state how long the personal creditors agreed to the carrying on of the business; whether the creditors were paid after the plaintiff furnished anything to carry on said business, and whether such personal creditors were paid from any fund which plaintiff helped to produce.

5. **Trustee has Rights to be Indemnified for Liabilities of the Business.**

In carrying on such business, the trustee has a right to be indemnified for liabilities growing out of the running of the business, and if he chooses not to do so, and is insolvent, the creditor may assert his right in his stead by way of subrogation. And in such case the petition should allege what fund is to be reached.

On Appeal.

Swing, J.

The substance of the petition is about as follows: The plaintiff is a railway company, and defendant is the administrator *de bonis non* with will annexed of Margaret Hengehold, deceased. There is due plaintiff from estate of said Margaret the sum of $810.74, with interest from February, 1888, on an account which is attached.

On July 9, 1886, the last will of said Margaret Hengehold was admitted to probate in Hamilton county, Ohio, whereby said Margaret bequeathed unto Frederick Hengehold, her husband, all and singular her personal property in trust for the use and benefit of her eight children and the survivors of them, and whereby she directed and empowered her said husband to take possession of all her personal estate, as said trustee, and to continue the coal business, in which she was engaged at the time of her death, for the benefit of her said children, and authorized him to sell out the business and invest the proceeds as he should see fit, and whereby she also appointed said Frederick Hengehold executor of her last will and guardian of the persons and estates of her said children, and waived appraisement and sale of her personal estate.

On August 25, 1886, said Hengehold qualified as said executor.

The indebtedness set forth in said account was incurred by the said Hengehold as executor in administering the estate of his deceased wife, as directed by the

terms of her will, to-wit: In continuing said coal business, and for services performed by said railway company in carrying coal, and was for the benefit of said estate. Said coal business was continued by said "administrator" under the authority of said will, by and with the consent of the creditors of the estate of said Margaret Hengehold.

On October 28, 1889, said Hengehold's resignation as executor and trustee was accepted by said probate court, and subsequently the defendant was appointed administrator *de bonis non* with the will annexed. The said Frederick Hengehold is insolvent.

2. Plaintiff, adopting all the allegations foregoing and making them a part of this, its second cause of action, further says that the several creditors of the estate of said Margaret Hengehold received payment upon their claims in large amounts from the proceeds of said coal business; that plaintiff is ignorant and unable to state the amounts arising from the proceeds of said coal business so used.

Wherefore plaintiff prays that said $810.74, with interest, may be declared a preferred claim against said estate, and that he (the administrator) be directed to pay said debt from the first assets which he may receive from said estate, and for any further relief, and in the alternative—that an accounting may be had of the proceeds of said coal business which were devoted to the payment of the general creditors of said estate, and that plaintiff may be subrogated to the rights of said creditors against said estate.

The case was argued upon a motion to dismiss the appeal, and also on a general demurrer to the petition.

The grounds upon which the dismissal of the appeal is asked are that the case is not appealable.

We think the motion is not well taken, and that the action is purely an equitable one. If the plaintiff has any right, it must come under the general doctrine of subrogation, which is purely an equitable action.

The motion is therefore overruled.

As to the demurrer to the petition: The following propositions of the syllabus in the case of *Saible* v. *Ferry*, 32 N. J. Eq., 791, a case cited by plaintiff, we think is a correct summary of the law stated therein. These propositions are.

1. "Executors empowered by the will of their testator to carry on his business after decease, are personally liable for the debts contracted thereby.

2. "But they have a right in equity to indemnify themselves for the payment of such debts out of the property lawfully embarked in the trade.

3. "From such right springs an equitable right of the trade creditors to resort to such fund for payment if their remedy against the executor be unavailing.

4. "*Prima facie*, only the property invested in the business at the testator's decease is regarded as the trade fund, and it requires a clear and unambiguous declaration of purpose in the will to justify the subjection of any other property to the risks of the venture."

In line with the foregoing is an authority also cited by the plaintiff, as follows: Service on Trusts, 639.

"If a trustee is authorized to carry on a business and to employ certain specific property for that purpose, the creditors have a right to the benefit of indemnity from and lien on the property which the trustee has devoted to the business; but this right is subject to any equities subsisting between the trustee and the *cestui qui trust* of the specific property; and when the trustee is in default, and is not entitled to indemnity, except upon the terms of making good the default, the creditors will have no right to except upon the same terms; but where the trustee for sale of a business, carries on the business without authority, for the benefit of the *cestui qui trust*, and incurs liability to tradesmen in so doing, there is no right in the creditors to come against the trust estate, but they must look to the trustee personally."

Applying these principles to the allegations of the petition, the first question which presents itself is whether the plaintiff can look beyond Frederick Hengehold, the trustee with whom it dealt and who was primarily liable, to any part of this estate; and in the next place, if it can, to what part of this estate may it look?

The petition alleges that said Margaret Hengehold bequeathed to Frederick Hengehold all her personal property in trust and for the use and benefit of her eight children whereby she directed and empowered him to take possession of all her personal estate, as said trustee for the benefit of her children, and authorizing him to sell out said business and invest the proceeds as he should see fit. And it further alleges: "And whereby also she appointed said Frederick Hengehold executor of her last will, and guardian of the person and estate of her said children, and waived appraisement and sale of her personal property." The petition further alleges that on August 25, 1886, the said Frederick Hengehold was duly appointed and qualified by the probate court as executor. There are no further allegations in regard to the appointment and qualification as executor or trustee, except the statement that "on October 28, 1889, said Hengehold's resignation as executor and trustee was accepted by said probate court."

There is no allegation in the petition that said Frederick Hengehold ever gave any bond as trustee alone (the allegation is that he was qualified as executor). Was this required?

Section 5981, Rev. Stat., provides: "Every trustee appointed in any will shall, before entering upon the discharge of his duty as such trustee, execute a bond with freehold sureties, payable to the state, in the probate court in which any such will may be admitted to probate, to the satisfaction of said court, conditioned for the faithful discharge of his duties as such trustee." * * *

If the will of Margaret Hengehold made her husband both a trustee and an executor, separate and apart from each other, he was required to give separate bonds for each.

The cases of *Gandolfo* v. *Walker*, 15 O. S., 251, and *Mathews* v. *Meek*, 23 O. S., 272, were cases where executors by the terms of the will were called upon to perform certain duties of a trust character not ordinarily pertaining to the administration of the estates, the question in each case arising upon the liability of the bondsmen.

At the time the bonds were given in those cases, sec. 5981, Rev. Stat., was not in effect, and the decision in *Gandolfo* v. *Walker*, *supra*, had not been made, but the decision in *Mathews, Adm'r*, v. *Meek*, *supra*, was made after the passage of this act, but it is not mentioned in the decision, nor is it alluded to by any of the learned counsel engaged in the case.

Those cases were decided upon the rule of law as established, without regard to the statutory requirements. This rule Judge McIlvaine lays down as follows, page 289: "It is undoubtedly true that the testator may, by his will, create a special trust as to a particular fund, over which the executor is not authorized or required to exercise his official control or management. But as a general rule, the powers of the executor are coextensive with the trusts created by the will. The office of an executor is only that of a trustee, and the whole will is looked to for the purpose of ascertaining the nature and extent of the trusts created thereby and the powers of the executor in relation thereto; and while the executor is engaged in administering any and all of the trusts created by the will, it must be presumed that he is acting in the capacity of executor alone, unless it plainly appears that such was not the intention. To constitute the person named in the will as executor, a special trustee, separate and apart from his office of executor, it is not enough that the powers granted to him or the duties imposed upon him in relation to a particular fund be such as are usual in the course of ordinary administration; it must also appear that the intention was to withdraw the particular trust from the management and control of the executor as such, and to create a separate office for its management."

It seems to us that, measured by the rule as thus stated, the allegations here clearly show that in the management and carrying on of the coal business, the testator intended that Frederick Hengehold was to do it as trustee separate and apart from his duties as executor. If so, his bond as executor would not cover his obligation as trustee, and under the law of Ohio, he could not act as trustee under a will until he had given bond. And if it was necessary that he should give a bond before he could act, the petition in this case should allege that he had given the bond required before he had become a lawful trustee to act as such... If not lawfully acting as trustee, he himself could enforce no rights against the trust fund growing out of its unlawful carrying on, and if he could not, parties standing in his shoes can have no greater rights, and for this reason the demurrer should be sustained.

But assuming that plaintiff can show that the bond required was given, and the petition be amended accordingly, we come to a consideration of the further allegations of the petition. It is herein charged that the general creditors of the estate of said Margaret Hengehold received payment in large amounts upon their claims from said coal business, and it is therefore asked that plaintiff's claim may be a preferred claim against said estate, or that an accounting may be had and that its claim may be subrogated to the rights of the general creditors.

The whole of the estate of said Margaret was liable for the payment of her debts, the personal estate being primarily liable. The whole of the testatrix's personal estate was left to said Frederick Hengehold as trustee to carry on the coal business, but this was subject to the provision of the law that the personal estate must first pay the testatrix's debts, or, in other words after the payment of her debts she directed that his personal estate be used to carry on the coal business.

The creditors therefore had a right to be paid from the personal estate, and if the executor so paid them there could be no right transferred to him to go upon any other portion of the estate for such an amount so paid.

But it said here that the creditors of the estate consented that the coal business should be so carried on. And we are cited to the case of *Dowse* v. *Gorton*, 1891, Appeal Cases, 192 L. R., wherein the house of lords decided that the executors were entitled in priority to claims of the testator's creditors to be indemnified out of the testator's estate against the liabilities which they had properly incurred in carrying on a business which testator had directed should be carried on by them.

In that case all of the testator's estate was to be placed at the disposal of the business while here only the personal estate is liable. While the petition does not say so, it was stated in argument that in this case there was a noncupative will, which, of course could only go to the personalty. The petition does not state how long the creditors agreed to the carrying on of the business; whether the creditors were paid after plaintiff furnished anything to carry on said business, or whether the creditors were paid from any funds which plaintiff had helped to produce.

We think it too plain to admit of question, that unless those creditors got in some way their claims paid out of a fund that plaintiff contributed towards producing or maintaining, that this plaintiff could get no right growing out of the payment of such creditors, for as we have hitherto said, the creditors of said Margaret Hengehold had a right to be paid their claims out of the personal estate, and the executor had a right, and in fact it was his duty to pay them; and if they were so paid the transaction was a completed one as to somebody, except that the executor should be credited with the same in his final settlement, and if the plaintiff dealt with the coal business after such payments, it could in no wise connect itself with such transaction, and for aught that appears in the petition such was the transaction here, as to the prayer asking for an accounting of the coal business. Admitting that the trustee had a right to be indemnified for liabilities growing out of the running of the business, and if he did not choose

to act as he might do, and was insolvent, that the creditor may, in a court of equity assert said right in his stead by way of subrogation, there is no allegation here that there is any fund to be reached.

This action is against Emile Schmidt, administrator *de bonis non*, the purpose being to subject a fund to the payment of plaintiff's claim—but there is no claim that he has any such fund as we think under the allegation of its petition it may reach.

If the coal business has been closed out and if the administrator has no fund arising from it, in his hands, and if plaintiff's only right is against such fund, it would seem like doing a vain thing to go into an accounting.

We think the demurrer to the petition should therefore be sustained, for the reason, in the first place, that the petition does not show that the trustee ever lawfully entered upon a discharge of his duties as such trustee, he not having given bond as required by statute.

And in the second place, there are no allegations in the petition that would authorize the plaintiff to go upon the real estate, if any belonging to said estate, and that as to an accounting there is no allegation that there is any fund in the hands of said administrator which might be subrogated to plaintiff's claim.